## CHICAGO AND ERIE RAILROAD COMPANY *v*. LUDDINGTON ET AL.

[No. 21,541. Filed May 24, 1910. Rehearing denied December 16, 1910.]

1. RAILROADS.—*Highways.*—*Watercourses.*—*Duty to Keep in Repair.*—It is the duty of a railroad company, under §5195 Burns 1908, subd. 5, §3903 R. S. 1881 and §7683 Burns 1908, Acts 1905 p. 581, §35, as well as in the absence of any statute, to restore highways and watercourses crossed by it to their former conditions of usefulness and safety. p. 37.

2. DRAINS.—*Use.*—*Control over.*—Public drains constitute a form of state activity, and the legislature has full control over the construction and repair thereof the same as over the highways. p. 38.

3. RAILROADS.—*Drains.—Duties concerning.*—It is the duty of a railroad company, even in the absence of a statutory requirement, to restore to its former state of usefulness and safety any public drain crossed by such company's right of way. p. 39.

4. RAILROADS.—*Highway Crossings.—Duties Concerning.*—It is the duty of a railroad company to construct and keep in safe condition all highway crossings, and this duty exists whether the highway was established before or after the railroad was built. p. 39.

5. RAILROADS.—*Rights of Way.—Highway Crossings.—Compensation.*—Railroad companies are not entitled to any compensation for interruption, inconvenience, increased expense, or increased risk, nor for necessary expenses, caused by the construction of highway crossings over their tracks. p. 40.

6. RAILROADS.—*Rights of Way.—Drains.—Damages.*—A railroad company is not entitled to any damages for the cost of constructing or keeping in repair, a public drain across its right of way, whether such drain was established before or after its road was built. p. 40.

7. RAILROADS.— *Drains.— Assessments.— Statutes.— Repeal.*— Section 6142 Burns 1908, Acts 1907 p. 518, §3, providing that the drainage commissioners shall "assess the benefits or damages * * * to each separate tract of land * * * and to easements held by railway * * * corporations," as well as §4275 R. S. 1881, and Acts 1885 p. 129, §3, substantially reënacted in said §6142, does not by implication abrogate the common law. requiring railroad companies to construct and keep in repair the crossings of all public drains. pp. 41, 43.

8. STATUTES.—*Common Law.*—The common law, except as changed by statute, has been the law of Indiana since 1807. p. 42.

9. STATUTES.—*Repeal of Common Law.*—A statute will be held to abrogate the common law only when so declared expressly or by necessary implication. p. 42.

From Porter Circuit Court; *Herbert S. Barr*, Special Judge.

Drainage petition by Joseph D. Luddington and others, against which the Chicago and Erie Railroad Company remonstrates. From a judgment against remonstrant, it appeals. *Affirmed.*

*Wiley & Jones, W. O. Johnson, Addison C. Harris, H. R. Kurrie, Stuart, Hammond & Simms, J. B. Peterson* and *Johnston & Bartholomew,* for appellant.

*H. H. Loring,* for appellees.

Monks, J.—Appellees, in 1908, brought this proceeding in the court below for the construction of a public ditch under the drainage law of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1908).

Appellant filed a remonstrance for damages on account of the crossing of its right of way by said drain. Such proceedings were had that appellant was assessed with benefits in the sum of $150, and the proposed work of drainage was established. From this judgment appellant appealed to this court.

The controlling question is whether a railroad company acquires its right of way subject to the right of the State to extend public ditches across it, and subject to the condition that it must place, keep and maintain its road across said public ditch in such condition as not unnecessarily to impair the usefulness or interfere with the free use of said ditch.

1. It is urged by appellant that it did not acquire its right of way subject to any such condition. Subdivision five of §5195 Burns 1908, §3903 R. S. 1881, and §7683 Burns 1908, Acts 1905 p. 581, §35, are cited by appellant as controlling this question. Said subdivision reads as follows: " To construct its road upon or across any stream of water, watercourse, road, highway, railroad or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or watercourse, road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises." Said §7683 is substantially the same.

It is settled law in this State, that it is the duty of a railroad that crosses a highway or watercourse to restore it to its former condition of usefulness and safety, even in the absence of any express statutory requirement. 3 Elliott, Railroads (2d ed.) §§1092, 1105; Elliott, Roads and Sts. (2d

ed.) §§779, 780; *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276, 278, and authorities cited; *Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind. 489, 502. See, also, *Ayler* v. *County Commissioners, etc.* (1878), 49 Md. 257, 33 Am. Rep. 249, 252; *Northern Cent. R. Co.* v. *Mayor, etc.* (1876), 46 Md. 425, 444-446; *City of Zanesville* v. *Fannan* (1895), 53 Ohio St. 605, 615, 42 N. E. 703, 53 Am. St. 664; *Cleveland* v. *City Counsel, etc.* (1897), 102 Ga. 233, 29 S. E. 584, 43 L. R. A. 638, and cases cited; Tiedeman, Mun. Corp. §306.

Public ditches established under the laws of this State are public ditches of the State, and, like public highways established under the laws of this State, are under the full
2.     control of the legislature. The construction and repair of public ditches under the laws of the State, like the establishment and improvement of public highways, are matters of public or state concern, and the exercise of a state function. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, and cases cited.

As was said in the case of *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 135, 136: " There are important powers delegated to municipalities which concern every citizen of the State, and for the proper exercise of which the State cannot abdicate responsibility by committing them to local officers. * * * In every matter which affects the safety, morals, health, or general welfare of the people at large, or of a considerable number of them, there is undoubtedly reserved in the State the power to supervise, control, and even coerce, local officers in the discharge of public duties, and even to send its own agents into any organized district, if necessary, to enforce a public right, or accomplish a public benefit. For instance, every citizen has the right to travel the public highways,—those in cities and towns, where, according to common usage, they are made, dug up, and improved by local action, as well as those in rural districts. In every part of these highways the traveler is entitled to the State's pro-

tection from violence, and from dangerous situations. For the preservation of public health, for the prevention of disease and epidemics, each inhabitant has an interest in the proper drainage of lands, and in the suppression of all insanitary conditions, whether rural or urban, and without regard for territorial boundaries, and the right to look to the State for protection against these evils so far as the same may be legally afforded. Likewise the enforcement of the State's criminal and revenue laws is of equal importance to all. In all these, and kindred things, the setting up of corporation lines forms no barrier to the strong arm of the State in safeguarding every public interest."

It is clear therefore that the rule stated as to a railroad's duty, in the absence of any statutory requirements, to restore a highway to its former condition of usefulness 3. and safety, when crossed by said railroad, applies also to railroads which cross public ditches. There is nothing in the law authorizing a railroad company to lay out its right of way and construct its tracks thereon that limits the power of the State to extend public ditches and highways across such right of way, even if the State could be bound by such limitation, which latter question we need not determine.

This court in the case of *Terre Haute, etc., R. Co.* v. *Soice* (1891), 128 Ind. 105, 107, said, concerning the duty of railroads under said subdivision five of §5195, *supra:* "Railroad companies, no doubt, have the right to construct their roads across public ditches without liability, if they restore them to their original state and usefulness." *Pittsburgh, etc., R. Co.* v. *Greb* (1905), 34 Ind. App. 625, 630, declares the same rule.

What was said by this court in the case of *New York, etc., R. Co.* v. *Rhodes* (1909), 171 Ind. 521, 524, in regard to public highways applies with equal force to public ditches, 4. and correctly states the law as to the duty of railroads when they cross public ditches. The court said

on page 524: " Under the statutes of this State, it is the duty of all railroad companies to construct and keep in safe condition all highway crossings; and this duty is the same whether the highway was established before or after the railroad was built. §5195 Burns 1908, subd. 5, §3903 R. S. 1881; *Evansville, etc., R. Co. v. State, ex rel.* (1898), 149 Ind. 276,·278, and cases cited; *Chicago, etc., R. Co. v. State, ex rel.* (1902), 158 Ind. 189, 191–193, and authorities cited; *Chicago, etc., R. Co. v. State, ex rel.* (1902), 159 Ind. 237, 240, 241, and authorities cited. It is clear from our statute and the cases cited that a railroad company acquires its right of way subject to the right of the State to extend public highways and streets across the same, and subject to the condition that it must place, keep and maintain all highway crossings, regardless of whether the highway was established before or after the road was built, in such condition as not unnecessarily to impair the usefulness of the highway, and so as not to interfere with the free use thereof, and in such a manner as to afford security for life and property, without reference to whether the railroad company owns the right of way in fee, or merely an easement therein. *Chicago, etc., R. Co. v. City of Chicago* (1894), 149 Ill. 457, 460, 461, 37 N. E. 78; Elliott, Roads and Sts. (2d ed.) §222, p. 236. Having accepted the privileges and franchises from the State and acquired its right of way subject to such right under said statute on the part of the State, it is not entitled to any compensation for the interruption and inconvenience, if any, nor for increased expense nor increased risk, if any, nor for the expense and inconvenience of the railroad company in complying with the requirements of said statutes as to highway crossings." See, also, *Vandalia R. Co. v. State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370.

It is evident that, in proceedings to establish a public ditch across the right of way of a railroad, the railroad company is not entitled to any damages for the cost and expense of complying with the requirements of subdivision five of §5195, *supra,* and §7683, *supra,* for the

reason that it acquired its right of way subject to the right of the State to extend public ditches as well as public highways across said right of way, and subject to the condition that it must place, keep and maintain its road across said public ditch, regardless of whether said public ditch was constructed before or after the road was built, in such condition as not unnecessarily to impair the usefulness of said ditch, and " so as not to interfere with the free use " thereof. *New York, etc., R. Co.* v. *Rhodes, supra,* and cases cited; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36, and cases cited. See, also, *Chicago, etc., R. Co.* v. *People, ex rel.* (1904), 212 Ill. 103, 72 N. E. 219, and cases cited; *Chicago, etc., R. Co.* v. *People, ex rel.* (1906), 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, and cases cited.

The case of *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, cited by appellant, was concerning a private ditch, and therefore is not in point here.

Judgment affirmed.

## ON PETITION FOR REHEARING.

MONKS, J.—Appellant concedes in its petition for a rehearing that the duty of railroads as to highway crossings, whether established before or after the railroad was built, was

7. correctly stated in the opinion of the court, but insists that the duty of railroads as to public drains, where the railroad crosses said public drains, is not now the same as it is at highway crossings, because the common law was changed as to such drain crossings by section three of the drainage law of 1907 (Acts 1907 p. 518, §6142 Burns 1908).

The part of said section necessary to the determination of this question requires the drainage commissioners to " assess the benefits or damages as the case may be to each separate tract of land to be affected thereby, and to easements held by railway or other corporations, as well as to cities, towns, or other public or private corporations, including any land, rights, easements or water power injuriously or beneficially

affected and to report to the court, under oath, as directed."

Substantially the same provision in regard to assessing the "benefits or injury" to easements held by railroads was contained in section three of the drainage law of 1881 (Acts 1881 [s. s.] p. 397, §4275 R. S. 1881), and in section three of the drainage law of 1885 (Acts 1885 p. 129).

There is nothing in said drainage laws of 1881, 1885 and 1907 that in plain and unequivocal terms changes or abrogates the common law as to the duty of railroads when the railroad crosses public drains. Does §6142, *supra*, by implication abrogate the common law as to said duty of railroads?

8. Since 1807 the common law has been in force in this State by virtue of legislative enactment. §236 Burns 1908, §236 R. S. 1881. See *Stevenson* v. *Cloud* (1839), 5 Blackf. 92.

9. It will be presumed that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. The construction of a statute will be such as to avoid any change in the prior laws beyond what is necessary to effect the specific purpose of the act in question. Endlich, Interp. of Stat. §127; Black, Interp. of Laws 110; 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §§454, 455; Maxwell, Interp. of Stat. (2d ed.) 96; 26 Am. and Eng. Ency. Law (2d ed.) 662–665; 8 Cyc. 373–376; *State* v. *Wilson* (1862), 43 N. H. 415, 82 Am. Dec. 163, 164; *Chadbourn* v. *Chadbourn* (1864), 91 Mass. 173; *State* v. *Pulle* (1866), 12 Minn. 164; *Jennings* v. *Commonwealth* (1835), 34 Mass. 80; *State* v. *Norton* (1850), 23 N. J. L. 33; *Goodwin* v. *Thompson* (1849), 2 G. Greene (Iowa) 329; *State* v. *Dalton* (1908), 134 Mo. App. 517, 525–530, 114 S. W. 1132, and cases cited.

As was said in the case of *Chadbourn* v. *Chadbourn, supra,* at page 173: " Repeals are not to be favored by implica-

tion, and courts of law are scrupulously careful not to sanction such repeals, unless the intention of the legislature to abrogate the previously-existing law is clearly manifest. Whenever it is apparent that a different purpose may be attained without essentially impairing the effect of the operative words of the statute, that construction is to be adopted which will leave the common law or an earlier enactment in force."

It was said in the case of *State* v. *Norton, supra,* at page 40: "When the common law and a statute differ, the common law gives place to the statute, only where the latter is couched in negative terms, or where its matter is so clearly repugnant that it necessarily implies a negative. 1 Blackstone's Comm. *89. It is a rule of exposition that statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced, for if the parliament had had that design, it is naturally said they would have expressed it. Dwarris, Statutes 695."

There is nothing in §6142, *supra,* showing any intention on the part of the legislature to repeal the common law as to the duty of railroads at public drain crossings, but 7. said section can be construed under the authorities before cited so that the common law as to such duty of railroads and said section can both stand. It is evident therefore that §6142, *supra,* did not repeal the common law as to the duty of railroads at public drain crossings, as claimed by appellant.

Petition for rehearing overruled.